IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RON SCOTT, | |
| Plaintiff, | CIVIL ACTION NO. 3:02-CV-0691 |
| v. | (JUDGE CAPUTO) |
| JEFFREY BEARD, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is Defendants Jeffrey Beard, Raymond Sobina, and Kathy Flowers' Motion for Summary Judgment as to Plaintiff Ron Scott's Complaint. For the reasons set forth below, the Court will grant Defendants' motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

**BACKGROUND**

Plaintiff Ron Scott was an inmate at the State Correctional Institute at Camp Hill, Pennsylvania ("SCI-Camp Hill") and the State Correctional Institute at Somerset, Pennsylvania ("SCI-Somerset"). (Doc. 50 ¶ 1). Defendants are Jeffrey Beard, Secretary of Corrections for the Pennsylvania Department of Corrections ("DOC"), Raymond Sobina, Superintendent at SCI-Somerset, and Kathy Flowers, a Lieutenant at SCI-Camp Hill. (Doc. 50 ¶ 2).

Since 1994, Plaintiff allegedly has been under a Vow of Nazirite, a religious vow based on Old Testament Biblical law, and a follower of the Assemblies of Yaweh, an established church with doctrine based on Old Testament Biblical traditions. (Doc. 50 ¶¶ 3-4). On April 28, 2000, Plaintiff was transferred to SCI-Camp Hill. (Doc. 1 ¶ 12). On

May 1, 2000, Plaintiff submitted a written request for a hair length exemption and a statement of doctrine from the Assemblies of Yaweh, which outlined Plaintiff's religious needs, beliefs and goals, to the Facility Chaplaincy Program Director. (Doc. 50 ¶ 20).  In his written request, Plaintiff explained that he is under the religious Vow of Nazirite and included a Statement of Doctrine. *Id.* However, in the request, Plaintiff did not include any information regarding hair length or that one of the tenets of that Vow is that he shall abstain from cutting his hair. (Doc. 50 ¶ 21).  In response to Plaintiff's request, the Chaplaincy Director informed Plaintiff that he needed additional information regarding the hair exemption. (Doc. 50 ¶ 22).  The Chaplaincy Director also granted Plaintiff a 45-day temporary hair length exemption. *Id.*  The Director informed Plaintiff that, in order to receive a permanent exemption, Plaintiff must comply with DC-ADM 807VI(E)(3) ("ADM 807"), which states in pertinent part:

> All inmates who request a hair length exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion.  This can be a certified letter from the religious leader of that particular faith group. . . .  This letter or certificate must indicate that the inmate in question has demonstrated a history of adhering to the tenets of that particular faith group.[1] (Doc. 1 ¶ 16).

Plaintiff did not provide a letter from a religious leader, nor any further documentation beyond the Statement of Doctrine, which, as previously mentioned, contained nothing regarding hair length. (Doc. 50 ¶ 23).  This was so despite Plaintiff writing and receiving correspondence from Elder Meyer, a religious leader at the Assemblies of Yahweh. *Id.*

---

[1]The Court previously granted Defendants' motion for judgment on the pleadings regarding Plaintiff's First Amendment challenge to ADM 807. (Doc. 18)

As Plaintiff failed to supply the letter, he was not awarded a permanent hair length exemption and his temporary hair length exemption expired on June 24, 2000. (Doc. 1 ¶ 19). Subsequently, Plaintiff was charged with misconduct for refusing to obey an order to cut his hair and sanctioned to a thirty (30) day cell restriction. (Doc. 50 ¶ 25). On July 29, 2000, Plaintiff was issued another misconduct for refusing to obey an order to cut his hair. *Id.* On August 3, 2000, Plaintiff pled guilty to the misconduct and sanctioned to fifteen (15) days disciplinary custody in the restricted housing unit (hereinafter "RHU"). (Doc. 50 ¶ 26). While in RHU, Plaintiff agreed to cut his hair in order to avoid further disciplinary action. (Doc. 50 ¶ 28). Pursuant to prison procedure, Plaintiff filed an administrative appeal, claiming that the procedures employed in denying Plaintiff's request for a religious hair length exemption, disciplining Plaintiff for adhering to the tenets of his religion, and sentencing Plaintiff to time in RHU were contrary to law. (Doc. 1 ¶ 47). Plaintiff's appeal was denied. (Doc. 50 ¶ 29). Plaintiff was released from RHU on August 10, 2000. (Doc. 50 ¶ 28).

On August 17, 2000, Plaintiff filed a grievance alleging that on August 3, 2000, his Bible was confiscated upon entering RHU. (Doc. 50 ¶ 30). On August 28, 2000, Plaintiff met with Defendant Flowers to review his grievance and signed a grievance form stating that the matter was resolved. (Doc. 50 ¶ 33). Plaintiff alleges, and Defendants deny, that Defendant Flowers threatened Plaintiff, telling him that "filing a grievance against someone here can make your life miserable" and that he would be retaliated against for doing so. (Doc. 1 ¶ 39). Plaintiff claims that Defendant Flowers' actions violated DOC policy DC-ADM 804(V)(C) (hereinafter "ADM 804"), which states that, "No one shall be punished, retaliated against, or otherwise harmed for good faith use of the grievance

procedure." (Doc. 1 ¶ 40).  Plaintiff claims that Defendant Flower's actions were unconstitutional and violated Pennsylvania law. (Doc. 1 ¶ 41).  Plaintiff claims that he did not pursue his grievance concerning the confiscation of his Bible, nor file a grievance against Defendant Flowers, because he feared retaliation. (Doc. 1 ¶ 42).

On September 7, 2000, Plaintiff was transferred from SCI-Camp Hill to SCI-Somerset. (Doc. 50 ¶ 34).  On February 27, 2001, Plaintiff submitted a written request to the Chaplain Program Director at SCI-Somerset requesting a hair length exemption. *Id.* The SCI-Somerset Chaplain Program Director informed Plaintiff that, in order to receive a hair length exemption, Plaintiff would have to comply with the steps outlined in ADM 807. (Doc. 1 ¶ 45).  Plaintiff was again failed to comply with ADM 807, as he did not provide a letter from a religious leader. (Doc. 1 ¶ 46).  Plaintiff's request for a hair length exemption was denied.

On March 26, 2001, Plaintiff filed a grievance regarding the grooming policy, claiming that ADM 807 is contrary to law. (Doc. 50 ¶ 35).  In the grievance, Plaintiff stated that he had an exemption to the grooming policy while at SCI-Camp Hill and that his rights were being violated. *Id.*  The Chaplain Program Director responded to Plaintiff's grievance on April 6, 2001, informing Plaintiff that his file contained no documents to substantiate his claim that he had a hair length exemption while at SCI-Camp Hill. (Doc. 50 ¶ 36).  Plaintiff was also informed that he had failed to produce any documentation from a religious leader verifying his religious background. *Id.*

Exactly what transpired thereafter is disputed.  However, the parties generally agree that Plaintiff filed several more requests for a hair length exemption, and grievances concerning the denials of those requests. (Doc. 1 ¶ 49).  On August 6, 2001,

Plaintiff filed an appeal to the Superintendent of SCI-Somerset, Defendant Sobina. (Doc. 1 ¶ 50). Plaintiff claimed that ADM 807 is contrary to law. *Id.* On or about August 8, 2001, Plaintiff received a copy of his appeal, time stamped "Received August 6, 2001." (Doc. 1 ¶ 52). On September 5, 2001, nearly one month after Plaintiff filed his appeal, Defendant Sobina denied Plaintiff's appeal on the grounds that the appeal was filed "well beyond the allowable time frame for submitting appeals to the Superintendent's level." (Doc. 1 ¶ 53). Plaintiff claims that Defendant Sobina's actions directly violated DOC policy DC-ADM 804(VI)(C)(4), which states, "The Facility Manager must notify the inmate of his/her decision within ten (10) business days after receiving the appeal." Plaintiff claims that Defendant Sobina's actions were unconstitutional and violated Pennsylvania law. (Doc. 1 ¶¶ 55-56).

Plaintiff appealed Defendant Sobina's decision to the Secretary's Office of Inmate Grievances and Appeals. (Docs. 1 ¶ 57; 50 ¶¶ 40-41). On September 20, 2001, Plaintiff received a letter requesting all documents related to Plaintiff's grievances and appeals. (Docs. 1¶ 58; 50 ¶ 41). The parties dispute whether Plaintiff submitted further documentation. Nonetheless, Plaintiff's appeal was not permitted. (Doc. 50 ¶ 41). Plaintiff alleges that this was an attempt by Defendants to prevent Plaintiff from exhausting his administrative remedies. (Doc. 1 ¶ 60). Plaintiff claims that Defendants' inaction violated DOC policy. (Doc. 1 ¶ 61). Plaintiff was released from SCI-Somerset in February, 2002. (Scott Dep. 6:20, April 22, 2004).

Plaintiff filed the complaint in the present action on March 24, 2002. (Doc. 1). Plaintiff's *pro se* complaint sought monetary and equitable relief and contained the following claims: the deprivation of Plaintiff's First, Eighth, and Fourteenth Amendment

Due Process Clause rights in violation of 42 U.S.C. § 1983, violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1,[2] and various state law claims. *Id.* Defendants filed a motion for judgment on the pleadings, as well as a brief in support of their motion on June 30, 2003. (Docs. 16-17.) On August 11, 2003, this Court granted Defendants' motion for judgment on the pleadings regarding Plaintiff's claim that ADM 807 was unconstitutional. (Doc. 18). Discovery was conducted. On December 1, 2004, Defendants filed a motion for summary judgment, as well as a brief in support of their motion. (Doc. 43). Plaintiff filed a brief in opposition on December 28, 2004. (Doc. 52). On January 7, 2005, Defendants filed their reply brief in support of their motion for summary judgment. (Doc. 54). On February 4, 2005, Defendants filed a motion to stay the Court's ruling on their summary judgment motion pending the Supreme Court's decision on the constitutionality of RLUIPA in *Cutter v. Wilkinson*, 544 U.S. 709 (2005). On February 11, 2005, the Court granted Defendants' motion to stay its ruling on summary judgment pending the resolution of *Cutter*. Both parties have since filed supplementary briefs. (Docs. 62, 64). Defendants' motion for summary judgment is now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[2]Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I.**

Plaintiff's complaint includes an action under 42 U.S.C. § 1983 alleging violations of his First, Eighth, and Fourteenth Amendment rights. Plaintiff also alleges violations of state law. However, Plaintiff failed to address these claims in his briefs in opposition to Defendants' motion for summary judgment. An issue raised in the complaint but ignored at summary judgment is deemed waived.[3] Accordingly, Defendants' motion for summary judgment will be granted with respect to Plaintiff's § 1983 claim, alleging violations of his First, Eighth and Fourteenth Amendment rights, as well as Plaintiff's state law claims.

**II.**

With respect to Plaintiff's RLUIPA claim for monetary damages, the Court concludes that Defendants are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from suits for monetary damages provided that they have not violated "clearly established statutory or constitutional rights

---

[3]*See Brown v. Johnson*, 116 Fed. Appx. 342, 345 (3d Cir. 2004); *Schneider v. Local 103 I.B.E.W. Health Plan*, 442 F.3d 1, 3 (1st Cir. 2006); *Rocafort v. IBM Corp.*, 334 F.3d 115, 121 (1st Cir. 2003); *Keenan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995); *Dressler v. Cmty. Serv. Commc'ns*, 275 F. Supp. 2d 17, 26 (D. Me. 2003); *Green v. New Balance Athletic Shoe, Inc.*, 182 F. Supp. 2d 128, 136 (D. Me. 2002); *Morales v. Challenger Caribbean Corp.*, 8 F. Supp. 2d 126, 132 (D.P.R. 1998).

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has stated that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Defendants were not plainly incompetent nor did they knowingly violate the law. Rather, Defendants could have reasonably believed that the grooming policy imposed by ADM-807 did not violate prisoners' rights under RLUIPA. Two observations lead the Court to this conclusion.

First, at the time that the events in this case took place, neither the Supreme Court nor the Court of Appeals for the Third Circuit had yet held that RLUIPA was constitutional or that a prison grooming policy violated it. Considering the fact that the predecessor to RLUIPA, the Religious Freedom Restoration Act ("RFRA"), which imposed the identical strict-scrutiny standard employed by RLUIPA, had been declared unconstitutional by the Supreme Court, *see City of Boerne v. Flores*, 521 U.S. 507 (1997), Defendants could have reasonably questioned the validity of RLUIPA. Consequently, it is difficult to conclude that the rights created by RLUIPA were "clearly established."

Second, the Court of Appeals for the Third Circuit had previously upheld the constitutionality of ADM-807. *See Wilson v. Schillinger*, 761 F.2d 921 (3d Cir. 1985); *Cole v. Flick*, 758 F.2d 124 (3d Cir. 1985); *Dreibelbis v. Marks*, 742 F.2d 792 (3d Cir.1984); *see also Poe v. Werner*, 386 F. Supp. 1014 (M.D. Pa. 1974). Having been upheld on multiple occasions, Defendants could have reasonably believed that ADM-807 would survive another attack, notwithstanding the strict standard of scrutiny imposed by RLUIPA as compared to the rational basis standard employed by courts for constitutional

challenges. Lending additional support to this conclusion is the fact that many federal courts have upheld the validity of prison grooming policies under RLUIPA or its predecessor, RFRA, concluding that the policies serve compelling governmental interests of prison safety and security by the least restrictive means.[4] If the federal courts can disagree as to whether prison grooming policies violate RLUIPA, Defendants cannot possibly be charged with knowing that ADM-807 violates clearly established rights.

Accordingly, Defendants are entitled to summary judgment on the ground of qualified immunity as to Plaintiff's RLUIPA claim for monetary damages.

### III.

Plaintiff's RLUIPA claims for equitable relief are moot. "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect

---

[4]*See Jackson v. D.C.*, 89 F.Supp. 2d 48, 65-69 (D.D.C. 2000), *vacated on other grounds*, 254 F.3d 262 (D.C. Cir. 2001) (upholding Virginia Department of Correction's grooming policy under RFRA's strict scrutiny standard); *Brunskill v. Boyd*, 141 Fed. Appx. 771 (11th Cir. 2005) (affirming district court's grant of summary judgment on state prisoner's RLUIPA claim, agreeing that hair length policy was least restrictive means of achieving compelling governmental interests in the security, health, and safety of inmates and staff); *Smith v. Ozmint*, No. 04-1819, 2006 U.S. Dist. LEXIS 54852 (D.S.C. March 31, 2006) (denying prisoner's request for temporary restraining order to prevent prison from cutting his hair, finding that grooming policy served compelling state interests of security, safety, and sanitation, and that prisoner could not show a strong likelihood of success on issue of least restrictive means even where grooming policy offered no alternative to short hair); *Ragland v. Angelone*, 420 F. Supp. 2d 507 (W.D. Va. 2006) (upholding prison grooming policy, expressly finding that policy furthered compelling penological interests in security, safety, and health, and was the least restrictive means available, rejecting religious exception proposed by prisoner as unworkable); *Diaz v. Collins*, 114 F.3d 69 (5th Cir. 1997) (upholding Texas prison regulation requiring short hair under RFRA, expressly finding that it was the least restrictive means); *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996) (upholding prison regulation requiring short hair under RFRA, finding that it was the least restrictive means of maintaining prison's compelling interest in safety and security)*; but see Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005) (holding that California Department of Corrections grooming policy requiring male inmates to maintain short hair imposed substantial burden on prisoner's religious practice, and was not the least restrictive means where religious exception to policy was never considered and no explanation was offered for why women's prisons did not adhere to equally strict grooming policy).

the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotations omitted).  An inmate's release from prison generally moots his equitable and declaratory claims. *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993). However, claims are not mooted when an action is either too short in duration "to be fully litigated prior to its cessation or expiration," or "there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." *Id.* at 206.  "When there is a voluntary cessation of a policy, a claim will not be rendered moot if there remains the possibility that [the plaintiff] will be disadvantaged in the same fundamental way." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)*.*

     Here, it is undisputed that Plaintiff was released from SCI-Somerset in 2002. (Doc. 50 ¶ 42; Scott Dep. 6:20, April 22, 2004).  Additionally, the Department of Corrections adopted DC-ADM 819 ("ADM-819") on June 10, 2002, establishing a less stringent procedure in order for an inmate to receive a religious exemption to ADM-807's grooming policy. (Doc. 50 ¶ 42).  In fact, Plaintiff states in his brief that he would have been able to comply with the new policy had it been in effect at the time he was in state custody, as ADM-819 does not require a letter from an outside religious leader. (Pl.'s Br. Summ. J. 21).  Consequently, there does not appear to be any possibility that Plaintiff would be disadvantaged in the same fundamental way if he had remained in or returned to state prison.  Accordingly, Plaintiff's claims for equitable relief are moot.

**CONCLUSION**

For the above stated reasons, the Court will grant Defendants' motion for summary judgment as to all of Plaintiff's remaining claims.[5]

An appropriate Order will follow.

| | |
|---|---|
| September 14, 2006 | s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

[5] Because Defendants' motion for summary judgment will be granted on other grounds, the Court does not address Defendants' constitutional attacks upon RLUIPA. The Court notes, however, that case law does not support Defendants' contentions. *See Cutter v. Wilkinson*, 544 U.S. 709 (2005) (holding that RLUIPA does not violate the Establishment Clause); *Williams v. Bitner*, 285 F.Supp.2d 593 (M.D. Pa. 2003) (holding that RLUIPA does not violate the Tenth or Eleventh Amendments, nor exceeds Congress' power under the Spending Clause).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RON SCOTT,

    Plaintiff,

    v.

JEFFREY A. BEARD, et al.,

    Defendants.

CIVIL ACTION NO. 3:02-CV-0691

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this  14th  day of September, 2006, **IT IS HEREBY ORDERED** that:

(1)    Defendant's Motion For Summary Judgment on All Remaining Claims in Plaintiff's Complaint (Doc. 43) is **GRANTED**.

(2)    The Clerk of Court shall mark this case **CLOSED**.

                                                    s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge